# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:14-cv-241-FDW

| | |
|---|---|
| OMAR R. DUNN, | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) **ORDER** |
| LARRY DUNSTON, et al., | ) |
| Defendants. | ) |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1). See 28 U.S.C. §§ 1915(e), 1915A(a). Also pending before the Court are Plaintiff's Motion for a Preliminary Injunction, (Doc. No. 3), and Plaintiff's Motion to Appoint Counsel, (Doc. No. 10). On May 14, 2014, this Court entered an order granting Plaintiff in forma pauperis status and allowing Plaintiff to waive the initial filing fee. (Doc. No. 5).

## I. BACKGROUND

Pro se Plaintiff is a prisoner of the State of North Carolina, currently incarcerated at Lanesboro Correctional Institution. The North Carolina Department of Public Safety website shows that Plaintiff was convicted on September 29, 2010, of being a habitual felon and larceny of a motor vehicle in Moore County. Plaintiff is serving a sentence on that conviction of 107 to 138 months, with a projected release date of June 28, 2021. Plaintiff was also convicted in Wake County on December 15, 2010, of being a habitual felon, as well as assault by strangulation and felony breaking and entering. Plaintiff is serving a sentence on that conviction of 70 to 93 months, with that sentence to run consecutive to the sentence on the Moore County conviction.

Plaintiff is designated as having a control status of "intensive control" and he has a "close custody" classification. Since Plaintiff entered Lanesboro, he has incurred 32 infractions, including weapons possession (two), attempt class A offense (two), unauthorized location, fighting (two), threaten to harm/injure staff (three), weapon possession (two), create offensive condition, disobeying orders (nine), flood cell, profane language (three), sexual acts (three), lock tampering (two), and barter/trade/loan money.

Plaintiff filed this action on May 12, 2014, naming numerous Lanesboro officials and administrators as Defendants. Plaintiff purports to bring a class action on behalf of himself and other similarly situated prisoners at Lanesboro. In his Complaint, Plaintiff contends that Defendants

> discriminated against him by housing him on a unit that imposes [standard operating procedures] that are not imposed upon similarly situated inmates, amounting to an atypical and significant hardship in relation to the ordinary incident of prison life, as well as exempting him from institutional jobs and school programs that they otherwise would not be exempt from him if housed at any other closed custody facilit[ies] within the [North Carolina Department of Public Safety].

(Doc. No. 1 at 2). Specifically, Plaintiff alleges that prison officials at Lanesboro have implemented standard operating procedures for security threat group (STG) inmates housed in a unit at Lanesboro known as "Moore Unit Two Side," that violate inmates' equal protection and substantive and procedural due process rights, and create conditions amounting to cruel and unusual punishment under the Eighth Amendment. (Id. at 6). Plaintiff further alleges that, upon arrival at Lanesboro, STG inmates "are singled out and forced to be housed on Moore Unit where they are subjected to work and school assignment discrimination, exempting them from the ideal jobs . . . that provide the most work assignments for inmates." (Id. at 7). Plaintiff

2

alleges that the duration of the sentences of STG inmates are affected "because they become indefinitely exempt from work and school assignments which alters the duration of their sentence." (Id. at 8). Plaintiff also alleges that inmates on Moore Unit are subjected to their housing assignments under the North Carolina Department of Public Safety's "modified housing program" for closed custody facilities without being given procedural due process—that is, the inmates housed in the Moore Unit are simply subjected to housing modifications without being able to contest them. (Id. at 8-9).

Finally, Plaintiff also purports to bring a claim for cruel and unusual punishment under the Eighth Amendment based on his contention that Lanesboro officials "have created a single cell block where it houses Level II STG inmates of rival gangs." (Id. at 10). Plaintiff alleges that housing rival gang members so close together creates an ongoing substantial risk of imminent harm.

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

The Court finds that Plaintiff fails to state a claim against any of the Defendants. First, Plaintiff alleges that the prison's standard operating policy for the unit in which he is housed violates the Equal Protection Clause. He does not allege, however, that similarly situated individuals have been treated differently under the policy, or that Defendants have acted with a discriminatory purpose. "There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 136 (1977); see also In re Long Term Admin. Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471 (4th Cir. 1999) (holding that the classification of a group as a security threat group does not violate the equal protection clause, absent evidence that similarly situated groups of inmates were treated differently under the prison's security threat group policies, or that the corrections department acted with a discriminatory purpose). Furthermore, as to Plaintiff's due process claim based on the custody classifications given to the inmates in Moore Unit, an inmate does not have a liberty or property interest in a particular custody classification unless the inmate can demonstrate that the restraints "'impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Beverati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997) (quoting Sandin v. Conner, 515 U.S. 472, 484

4

(1995)); see also McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that "the decision where to house inmates is at the core of prison administrators' expertise"). Plaintiff here has simply not shown that the restraints and limitations placed on him (and other inmates assigned to the Moore Unit) due to his custody classification imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. See Fraise v. Terhune, 283 F.3d 506, 522-23 (3d Cir. 2002) ("Although inmates who are transferred to the [Security Threat Group Management Unit] face additional restrictions, we hold that the transfer to the [Security Threat Group Management Unit] does not impose an atypical and significant hardship in relation to the ordinary incidents of prison life."). Because Plaintiff has failed to show that he had a liberty interest, he was not entitled to the protections of procedural due process. Thus, Plaintiff has not stated a procedural due process claim based on his allegation that prisoners are not allowed to contest their modified housing assignments. See McNeill v. Currie, 84 Fed. App'x 276 (4th Cir. 2003).

Plaintiff, similarly, has not stated a claim for a violation of his constitutional rights based on his allegations that the inability of STG inmates to participate in certain school and work assignments affects the length of their sentences. Inmates have no constitutional right to be housed in any particular prison or in a prison with less restrictive conditions. Meachum v. Fano, 427 U.S. 215, 224 (1976).

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons.

Id. at 224-25. Inmates also have no constitutionally protected interest in work release or assignments. See Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir. 1991). Thus, Plaintiff's

allegations regarding the inability of STG inmates at Lanesboro to participate in certain school and work assignments do not give rise to a constitutional violation. Moreover, Plaintiff has not alleged specifically that his own sentence would have been reduced if he were allowed to participate in various programs at the prison. Rather, he merely speculates that he would be entitled to a reduction in his sentence if he were allowed to participate in various prison programs. "In the absence of some entitlement, a fear or hope about a future discretionary decision is too speculative to give [a prisoner] a liberty interest." Gaston, 946 F.2d at 344. In sum, Plaintiff has not stated a claim for a violation of his constitutional rights based on his allegations that STG inmates in the Moore Unit at Lanesboro are not allowed to participate in various school and work assignments.

Finally, as for Plaintiff's purported Eighth Amendment claim based on the allegation that rival gang members are housed in close proximity at Lanesboro, Plaintiff fails to state a claim for cruel and unusual punishment. As the Court has already noted, the "decision where to house inmates is at the core of prison administrators' expertise." McKune, 536 U.S. at 26. Even if the consequence of a prison's security classifications is that rival gang members end up being housed near to one another, this is not, in and of itself, a constitutional violation. See Patrick v. Davis, No. 13-cv844, 2013 WL 4854458, at *2 (S.D. Ill. Sept. 11, 2013) ("Housing rival gang members together and not segregating mentally ill inmates also do not amount to Eighth Amendment violations in and of themselves."); Bethea v. Davis, No. 13-cv-640-MJR, 2013 WL 4782225, at *1 (S.D. Ill. Sept. 6, 2013) (noting that the practices of housing rival gang members together, and of mixing mental health patients with other inmates, "do not violate the Constitution in and of themselves"); see also Mayoral v. Sheahan, 245 F.3d 934, 939 (7th Cir.

2001) (observing that "[t]he number of gang members housed by the [department of correction] and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs"). Here, Plaintiff does not allege that he was attacked, nor does he allege that he is the target of any specific threat or that he has requested protection from any prison official. In sum, Plaintiff's purported Eighth Amendment claim based on his allegation that rival gang members are being housed together at Lanesboro is without merit.

IV.  **CONCLUSION**

For the reasons stated herein, the Court will dismiss this action for failure to state a claim.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

2. Plaintiff's Motion for a Preliminary Injunction, (Doc. No. 3), and Plaintiff's Motion to Appoint Counsel, (Doc. No. 10) are **DENIED** as moot.

Signed: October 20, 2014

Frank D. Whitney
Chief United States District Judge